IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CASE NO.: CR205-44 |
| v. ) | |
| ) | |
| ) | |
| MARK DAMON WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Mark Damon Williams ("Williams") is charged with violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, and 18 U.S.C. § 924(e), being an armed career criminal. Williams filed a Motion to Suppress and a Motion for a Jackson-Denno hearing. The undersigned conducted an evidentiary hearing concerning these matters on August 21, 2006, at which Investigator Walter Jones ("Jones") with the Brunswick Police Department and Investigators Craig Cupp ("Cupp") and Garret Hogue ("Hogue") with the Glynn County Police Department testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing and a review of the videotape of Jones' December 8, 2004, interview with Williams established the following:

Law enforcement officials executed a search warrant at 3404 Lee Street in Brunswick, Georgia, on December 8, 2004. Williams was present at the residence at that time. Jones testified that, when he entered the residence, Williams was in handcuffs in the living room. Jones also testified that, while they were still at 3404 Lee Street and after

AO 72A
(Rev. 8/82)

Williams was placed under arrest, he asked Williams why he was at the residence. Williams told him that he was at the Lee Street residence "for protection." Jones further testified that he spoke with Williams that night at the Glynn County Police Department, and that it was his intention to speak with Williams about the search warrant concerning alleged drug transactions occurring at 3404 Lee Street.

Jones began his interview of Williams at approximately 11:00 p.m. on December 8, 2004. (See Gov't's Ex. A.) After gathering biographical information about Williams and his family, Jones read to Williams a "Miranda Warning Rights and Waiver Form." (Def.'s Ex. 1.) Jones explained what was written on this form, and Williams looked as if he were reading along with Jones; after every right afforded by Miranda, Jones asked Williams if he understood, to which Williams responded that he did. Williams signed the form, indicating that he understood his rights, waived those rights, and was willing to speak to Jones regarding the search warrant which was executed at the Lee Street residence. (Id.) Williams told Jones that he was at the Lee Street residence to visit Mr. Hawkins and was watching an Atlanta Hawks basketball game. Williams stated that he stood up to look outside because he heard "a bunch of yelling." The officers executing the search warrant entered the house, and Williams was told to get on the ground. After that, Williams said he was handcuffed. Williams told Jones that he did not have a gun on him but that, at some point, he may have moved some guns around the residence or moved them out of the way. Williams also told Jones that there were guns at the Lee Street residence because the occupants feared that the house would be "shot up" again as it was on September 27, 2004. Williams admitted to Jones that he is a convicted felon. Jones informed Williams that he was being charged with possessing a misdemeanor amount of

2

marijuana and that he might be charged with being a convicted felon in possession of a firearm. Jones also informed Williams that one of the officers who first entered the Lee Street residence saw Williams holding a gun; Williams denied that he had a gun in his hands.

The next morning, December 9, 2004, between the hours of 9:00 a.m. and 12:00 p.m., Cupp and Hogue met with Williams in an interview room at the Glynn County Detention Center. Cupp stated that, upon entering the room, Williams asked him what he wanted. Cupp told Williams that he wanted to talk to Williams regarding a gun found the day before at 3404 Lee Street and to follow-up on the shooting incident which occurred at that residence in September 2004. Williams stated that his fingerprints were probably on the gun recovered the previous day because there were guns at every door and that he would have touched them to move them out of his way. Cupp testified that he asked Williams on two occasions whether he was supposed to be around guns. Cupp also testified that Williams responded after the second occasion that he had a lawyer and did not want to talk to the officers. Cupp stated that his interview of Williams ended immediately and that he left the room. Cupp said that Hogue remained in the interview room.

Hogue testified that he had a conversation with Williams after Cupp left the room but could not remember the substance of the conversation; it was Hogue's belief that this conversation had nothing to do with the case, as he did not have a supplemental report in the case file. Cupp and Hogue testified that neither of them advised or reminded Williams of his <u>Miranda</u> rights, nor did either of them show Williams a "Waiver of Rights" form he may have signed. Cupp and Hogue also testified that they were not present during Jones'

3

interrogation of Williams the night before, and they had not spoken to Jones or reviewed the videotape of the interview prior to speaking to Williams on December 9, 2004. When the undersigned asked Hogue about his purpose in interviewing Williams, Hogue stated that he was investigating the September 2004 shooting incident.

Cupp testified that during his brief interview, Williams did not appear to be under the influence of any drugs or alcohol; he was not restrained in any manner; and there was no threat of force used against Williams. Jones testified that, during his interview of Williams, he did not appear to be under the influence of alcohol or drugs; he was not restrained in any manner; he did not appear to be in any mental or emotional distress; and that he seemed to understand his rights.

Williams, through his counsel, filed a Motion to Suppress the statements he made to Cupp on December 9, 2004, alleging that these statements were obtained without the benefit of having his <u>Miranda</u> rights administered. The testimony obtained and counsel's arguments made during the evidentiary hearing necessitate a discussion of whether the statement that Williams was at 3404 Lee Street "for protection" should be suppressed; whether any inculpatory statements Williams may have made during the December 8, 2004, interview with Jones, which was videotaped, should be suppressed; and whether any statements Williams may have made to Hogue on December 9, 2004, after Williams stated that he had an attorney, should be suppressed.

4

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION TO AUTHORITY

**I.     Williams's Assertion That his Statements Should be Suppressed.**

**A.     Statement Made to Jones While at 3404 Lee Street.**

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards[1] effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430, 104 S. Ct. 1136, 1144, 79 L. Ed. 2d 409 (1984)). An objective, reasonable man test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 1360. In other words, the inquiry is whether "a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest'

---

[1] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.

5

to such extent that he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430, 104 S. Ct. at 1145-46).

Based on the testimony given during the evidentiary hearing, the uncontroverted evidence before the Court is that Williams was "in custody" for Miranda purposes when he answered Jones' question(s) at the Lee Street residence. Williams was lying on the floor handcuffed; Jones stated that Williams answered question(s) after he was arrested.[2] Williams' statement(s) to Jones during the execution of the search warrant at the Lee Street residence should be suppressed.

**B.    Statement Made During the December 8, 2004, Videotaped Interview.**

"As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. A waiver is effective where the 'totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension.'" United States v. Goodman, 147 Fed. Appx. 96, 101 (11th Cir. 2005) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986)). "[T]he burden of showing admissibility rests . . . on the prosecution. The prosecution bears the burden of proving, at least by a preponderance of the evidence, the Miranda waiver and the voluntariness of the confession." Missouri v. Seibert, 542 U.S. 600, 608, 124 S. Ct. 2601, 2608 n.1, 159 L. Ed. 2d 643 (2004) (internal citations and punctuation omitted). The "suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the

---

[2] The undersigned analyzed this issue as being a "custody" case so as to give the benefit of the doubt that Williams had not been arrested at this time. Assuming that Williams had not been placed under arrest at this time, a reasonable man in his position would have felt that he was under arrest. See Phillips, 812 F.2d at 1360.

6

suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." Colorado v. Spring, 479 U.S. 564, 577, 107 S. Ct. 851, 859, 93 L. Ed. 2d 954 (1987).

The evidence before this Court is that Williams voluntarily, knowingly, and intelligently waived his Miranda rights before Jones interviewed him at the Glynn County Detention Center. Although Jones testified that he intended to speak to Williams regarding the subject matter of the search warrant (drugs) and that this was written on the Miranda waiver form, the statement Williams made to Jones that he may have moved some guns around the Lee Street residence or moved them out of the way is not subject to suppression. Williams was informed that "anything" he said during this interview could be used against him in a court of law, and Williams indicated verbally and in writing that he understood this warning. (See Gov't's Ex. A; Def.'s Ex. 1.) Armed with this understanding, Williams, who has a high school education, waived the protection afforded by this warning. Williams' statements to Jones during the December 8, 2004, interrogation at the Glynn County Detention Center should not be suppressed.

C.    **Statement Made to Cupp During the December 9, 2004, Interview.**

Generally, law enforcement officers are permitted to conduct an interrogation with a suspect concerning a crime or offense unrelated to the subject matter of a prior interrogation. However, certain factors guide the admissibility of any statements a defendant may make during a subsequent interrogation, such as whether the police provided a fresh set of Miranda warnings before the second interrogation and whether the second interrogation was restricted to a crime that had not been a subject of the earlier

7

interrogation. See Weeks v. Angelone, 176 F.3d 249, 268 (4th Cir. 1999) (citing Michigan v. Mosley, 423, U.S. 96, 104-07, 96 S. Ct. 321, 326-28, 46 L. Ed. 2d 313 (1975).[3]

The evidence reveals that Jones advised Williams of his Miranda rights on December 8, 2004, and that Williams waived these rights prior to Jones' interrogation, which involved Williams' knowledge or involvement in alleged drug activity at 3404 Lee Street. The evidence also reveals that neither Cupp nor Hogue: advised Williams of his Miranda rights; reminded Williams of his Miranda rights; knew that Jones obtained Williams' written waiver of these rights; or reviewed the videotape of Jones' interview with Williams. The evidence further reveals that Cupp and Hogue were seeking information regarding the September 2004 shooting incident at 3404 Lee Street, which is unrelated to the basis of the search warrant executed at this residence on December 8, 2004. Williams' statements to Cupp should be suppressed, as they were obtained in violation of Williams' Miranda rights.[4]

---

[3] The undersigned recognizes that Mosley and much of its progeny pertain to situations in which a defendant invoked his right to remain silent during an interrogation and law enforcement officials subsequently interrogated the defendant concerning an offense unrelated to the subject matter of this first interrogation. The undersigned also recognizes that there are other factors for a court to consider in determining the admissibility of statements obtained after a defendant invokes his right to silence, such as whether the police had given the suspect Miranda warnings at the first interrogation and the suspect acknowledged that he understood the warnings; whether the police immediately ceased the interrogation when the suspect indicated that he did not want to answer questions; and whether the police resumed questioning the suspect only after the passage of a significant period of time. Weeks, 176 F.3d at 268. The Court is unaware of any precedential (or even persuasive) authority on "all fours" with the case sub judice— i.e., Williams was advised of his Miranda rights, waived those rights, and was interrogated the next day about an unrelated offense by two different officers without the benefit of re-advisement of his Miranda rights or a reminder that he had been given his Miranda rights or having been shown his signed "waiver form" from the previous night's interview. Mosley appears to represent the line of cases most closely analogous to this case.

[4] The undersigned is troubled by the fact that neither Cupp nor Hogue advised Williams of his Miranda rights in light of the two investigators' testimony that they had no knowledge of Williams having been made aware of his Miranda rights.

8

### D. Statements Made to Hogue After Williams Told Officers he had an Attorney.

Finally, there is evidence that Hogue had a conversation with Williams after Williams told Cupp and Hogue that he had an attorney and did not want to speak to the officers any longer. Hogue testified that he could not remember what he and Williams discussed after Williams stated that he had an attorney. Assuming that any statements Williams may have made to Hogue at this time were of an inculpatory nature, these statements should be suppressed. Once a suspect unequivocally invokes his Miranda rights, any police-initiated conversation must cease. See United States v. Dowd, 451 F.3d 1244, 1250 (11th Cir. 2006).

## II. The Voluntariness of Williams' Confession.

The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), governs the voluntariness of confessions, and in pertinent part provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376, 84 S. Ct. at 1780 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause of the Fourteenth Amendment when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S. Ct. 274, 279, 4 L. Ed. 2d 242 (1960);

AO 72A
(Rev. 8/82)

Chambers v. Florida, 309 U.S. 227, 237, 60 S. Ct. 472, 477, 84 L. Ed. 716 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." Blackburn, 361 U.S. at 206, 80 S. Ct. at 280 (citing Fikes v. Alabama, 352 U.S. 191, 197, 77 S. Ct. 281, 284, 1 L. Ed. 2d 246 (1957)). When a determination has been made that the confession is "involuntary," it must be set aside. Id. at 205, 80 S. Ct. at 279.

Jones' testimony reveals that, during his interrogation of Williams at the Glynn County Detention Center, Williams did not appear to be under the influence of any drugs or alcohol; he was not restrained in any manner; he did not appear to be in any mental or emotional distress; and that he seemed to understand his rights. A review of the videotaped interview Jones conducted on December 8, 2004, does not reveal that Jones threatened or coerced Williams to answer his questions. It appears that Williams' statements at the Glynn County Detention Center on December 8, 2004, were not obtained in an unconstitutional manner, and there is no evidence to the contrary before the Court.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Williams' Motion to Suppress statements be **GRANTED** in part and **DENIED** in part. The statement Williams made at the Lee Street residence on December 8, 2004, and the statements Williams provided to Cupp and Hogue on December 9, 2004, should be suppressed. The statements made by Williams to Jones at the Glynn County Detention Center on December 8, 2004 should not be suppressed.

**SO REPORTED** and **RECOMMENDED**, this 25th day of August, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)